UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERI LOMONOCO,

                         Plaintiff,

v.                                                          1:15-CV-1163
                                                            (GTS/ATB)
SAINT ANNE INSTITUTE,

                         Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

LUIBRAND LAW FIRM, PLLC               KEVIN A. LUIBRAND, ESQ.
  Counsel for Plaintiff
950 New Loudon Road
Latham, New York 12110

GIRVIN & FERLAZZO, P.C.                  DANIEL RUBIN, ESQ.
  Counsel for Defendant                   PATRICK J. FITZGERALD III, ESQ.
20 Corporate Woods Boulevard         SCOTT P. QUESNEL, ESQ.
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

         Currently before the Court, in this employment civil rights action filed by Teri Lomonoco

("Plaintiff") against Saint Anne Institute ("Defendant"), is Defendant's motion for summary

judgment.  (Dkt. No. 63.)  For the reasons set forth below, Defendant's motion for summary

judgment is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

         Generally, in her Complaint, Plaintiff asserts three claims.  (Dkt. No. 1 [Pl.'s Compl.].)

First, Plaintiff, a fifty-nine year old special education teacher, claims that Defendant engaged in

age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") based

on the decision to re-assign her to a position more suitable for an entry-level clerk while giving

her assigned students to two teachers in their twenties who each had less than one year of

teaching experience and who lacked certain certifications held by Plaintiff ("Claim One").  (*Id.*

at ¶¶ 28, 30-33.)

Second, Plaintiff claims that Defendant engaged in age discrimination in violation of the

New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.* ("NYSHRL") based on the

same facts as those underlying Claim One ("Claim Two").  (*Id.* at ¶¶ 1, 34-37.)

Third, Plaintiff claims that Defendant engaged in retaliation in violation of N.Y. Lab. L. §

740 and N.Y. Soc. Serv. L. § 413[1] based on its taking adverse action against her (through

stripping her of her duties and removing her from her classroom) in response to her reporting to

State authorities the alleged mistreatment of students with disabilities that presented a substantial

and specific damage to the public health and safety ("Claim Three").  (*Id.* at ¶¶ 38-44.)

### B.    Undisputed Material Facts on Defendant's Motion for Summary Judgment

As an initial matter, the Court notes that Plaintiff admitted a number of facts, but

attempted to add additional facts to those admissions in an effort to "spin" the impact, or

perceived impact, of the admissions.  (Dkt. No. 66, Attach. 14, at ¶¶ 20-21, 26, 30, 44-49, 55, 84-

85, 98-101 [Pl.'s Rule 7.1 Resp.].)  The facts admitted are therefore deemed admitted; to the

extent that Plaintiff has added additional facts, those facts will not be considered because they

have not been submitted through the procedure outlined by N.D.N.Y. L.R. 7.1(a)(3).  *See*

N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's responses shall . . . admit[] and/or deny[] each of

the movant's *assertions* in matching numbered paragraphs . . . .  The non-movant's response also

---

[1]    To the extent that Plaintiff's third claim is premised on N.Y. Soc. Serv. L. § 413, that claim was dismissed by the Court's Decision and Order of August 18, 2016.  (Dkt. No. 26 [Decision & Order, 8/18/2016].)

may set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs.") (emphasis added).[2]

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and expressly admitted by Plaintiff in her response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 63, Attach. 2 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 66, Attach. 14 [Pl.'s Rule 7.1 Resp.].)

1. Defendant was established in 1887.

2. Defendant is a private, not-for-profit, residential, and community-based treatment center.

3. Defendant's comprehensive programs include a year-round Regents accredited and certified Junior and Senior High School for emotionally disabled students.

---

[2]    *See also Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'"); *Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

4.     Defendant also provides residential child care for young women ages 12 through
21, day treatment and family services for children and families in crisis, a pre-
school and daycare for children ages three through four, and sex abuse prevention
and juvenile sex offender programs.

5.     All of these services offered by Defendant are provided on Defendant's 8.5 acre
campus located within the heart of Albany, New York.

6.     Plaintiff has been employed by Defendant for approximately thirty years and has
consistently held the position of teacher.

7.     While actively working for Defendant, Plaintiff was typically scheduled to work
from 8:50 am to 2:50 pm each day from approximately the beginning of
September until approximately the end of June.

8.     Defendant does not offer tenure to its faculty members, and all faculty members
are considered to be at-will employees.

9.     On September 13, 2013, Defendant entered a contract with the City School
District of Albany ("CSDA") to provide tutorial academic programming to CSDA
students during the 2013-2014 school year.

10.    This program was generally referred to by Defendant as the "Albany Program."

11.    Under the Albany Program, the CSDA sent students ages 12 through 18 who were
struggling academically and/or behaviorally to Defendant for academic
instruction.[3]

---

[3]      Plaintiff denies this asserted fact, citing to pages 88 through 90 of the deposition
testimony of Barbara Darius.  (Dkt. No. 66, Attach. 14, at ¶ 11 [Pl.'s Rule 7.1 Resp.].)  However,
nothing in the portion of the testimony cited (which regarded the 2014-2015 school year
exclusively) directly contradicts the substance of Defendant's asserted fact.  *Baity*, 51 F. Supp.

12.     Students who took part in the Albany Program attended classes up to four days

per week, Monday through Thursday, during the hours of 12:30 pm to 3:00 pm.[4]

13.     The initial capacity of the program was ten students with the option of serving

another ten students if Defendant and the CSDA agreed to do so.[5]

14.     The contract between the CSDA and Defendant for the Albany Program was

renewed for the 2014-2015 school year.

15.     In October 2013, Defendant hired Jefferson Weidman to serve as Principal.

16.     In March 2014, Plaintiff wrote two anonymous letters to the New York State

Education Department about concerns she had relating to the educational services

provided to Defendant's students.

17.     In May 2014, Plaintiff contacted the New York State Justice Center for the

Protection of People with Special Needs about her concerns.

18.     At the end of June 2014, the 2013-2014 school year came to an end and Plaintiff

began her summer break.

19.     By e-mail dated August 29, 2014, Plaintiff was advised by Principal Weidman

that she would be assigned to the Albany Program for the 2014-2015 school year.

20.     According to the e-mail of August 29, 2014, that Principal Weidman sent to

Plaintiff, Plaintiff was assigned to work full-time on the planning and

---

3d at 418; *see also Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support).  This fact is therefore deemed admitted.

[4]      *See, supra*, note 2 of this Decision and Order.  (*See also* Dkt. No. 66, Attach. 14, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)

[5]      *Id.*  (*See also* Dkt. No. 66, Attach. 14, at ¶ 13 [Pl.'s Rule 7.1 Resp.].)

implementation of instruction for the students in the Albany Program during the 2014-2015 school year.[6]

21.     Plaintiff subsequently requested a meeting to discuss her assignment for the 2014-2015 school year.

22.     A meeting was held on September 3, 2014, the day before classes were scheduled to begin, and was attended by, among others, Principal Weidman and Anthony Cortese, Chief Executive Officer for Defendant.

23.     When Plaintiff's assignment for the 2014-2015 school year was confirmed during the meeting of September 3, 2014, Plaintiff left the meeting and school grounds.[7]

24.     After leaving Defendant's campus on September 3, 2014, Plaintiff did not return to work and subsequently submitted a letter from her physician dated September 10, 2014, which stated as follows:

> Please be advised that [Plaintiff] is under my care for treatment of a medical problem.  Given this medical problem, I have suggested that she remain out of work effective 9/4/14 to allow for improvement of her condition.  I anticipate she may return to work in the future, but as of now, we have no firm date at which time I would suggest she return to work.  I will advise you as soon as this becomes clearer.

---

[6]     In responding to the above-stated fact, Plaintiff relies on the deposition of Barbara Darius, in which she testified that, after the above e-mail was sent, Principal Weidman orally told Ms. Darius to tell Plaintiff that, at least for the beginning of the school year, her job duties consisted of photocopying the Common Core standards and preparing the lesson plans for the other teachers (and photocopying those lesson plans).

[7]     Plaintiff denies that her assignment for the applicable school year was confirmed at that meeting; however, in the portion of her deposition testimony cited by Defendant, Plaintiff outlined what she understood to be the responsibilities and duties of her new assignment.  (Dkt. No. 63, Attach. 4, at 4-12 [Pl.'s Dep.].)  Notably, the evidence cited by Plaintiff does not contradict Defendant's asserted fact.  (Dkt. No. 66, Attach. 14, at ¶ 23 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.  *Baity*, 51 F. Supp. 3d at 418; *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

25.    As of the date of Defendant's submission of its motion, Plaintiff has not returned to work but remains an employee of Defendant who is on an unpaid leave of absence.[8]

26.    During her deposition, Plaintiff testified that the room assignment and tasks she referenced in paragraph 27 of her Complaint were given to her during the meeting held on September 3, 2014.

27.    During her deposition, Plaintiff testified that, on September 3, 2014, she would have reported to the office that she had been "relegated" to on the first day of school.[9]

28.    During her deposition, Plaintiff testified that she never reported to that office, never performed any photocopying work, and did not perform any work for Defendant whatsoever during the 2014-2015 school year because she left school grounds on September 3, 2014, and began her current leave of absence.[10]

29.    While working in the Albany Program, Plaintiff's supervisor would have been Barbara Darius.

---

[8]    Plaintiff denies this asserted fact and adds factual information; however, Plaintiff has not provided evidence to support her denial of Defendant's asserted fact.  (Dkt. No. 66, Attach. 14, at ¶ 25 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.  *Baity*, 51 F. Supp. 3d at 418; *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

[9]    Plaintiff denies this asserted fact; however, her assertion of additional facts does not contradict Defendant's actual asserted fact, which is supported by the evidence cited by Defendant.  (*Compare* Dkt. No. 63, Attach. 2, at ¶ 27 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 66, Attach. 14, at ¶ 27 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.  *Baity*, 51 F. Supp. 3d at 418; *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

[10]    *See, supra*, note 8 of this Decision and Order.  (*Compare* Dkt. No. 63, Attach. 2, at ¶ 28 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 66, Attach. 14, at ¶ 28 [Pl.'s Rule 7.1 Resp.].)

30.     Ms. Darius testified that Plaintiff would have begun working in the Albany
Program "right away," meaning at the very beginning of the 2014-2015 school
year, had Plaintiff not taken a leave of absence.

31.     During her deposition, Plaintiff testified that the two teachers referenced in her
Complaint (but who were not specifically named therein) are Defendant's
employees Kristina Savoie and Emily Cody.

32.     During her deposition, Plaintiff could not recall when she learned that "her
assigned students" had been assigned to other teachers.

33.     Plaintiff was posed an interrogatory during discovery that asked her "[t]o the
extent that Plaintiff claims that she experienced an adverse employment action,
identify each action taken by Defendant that Plaintiff claims to be an adverse
employment action," to which Plaintiff responded "Plaintiff was constructively
discharged when she was removed from St. Anne's employee health care plan and
so notified on November 15, 2015, removed from the employee life insurance
plan and so informed on November 9, 2015, [and] removed from the teaching
duties on or about September 3, 2015, and assigned menial job tasks."

34.     During a telephone conference held with the Court on September 1, 2017, in
connection with Plaintiff's motion to preclude evidence that could be offered by
Defendant in response to allegations of retaliatory conduct in relation to
Plaintiff's health and life insurance, United States Magistrate Judge Andrew T.
Baxter stated that "it appears that plaintiff's counsel was continuously copied on
some of the e-mails relating to plaintiff' insurance so he was well aware of what
was happening with her insurance. . . ."

35. During a telephone conference held with the Court on September 1, 2017, Magistrate Judge Baxter specifically referenced the fact that Plaintiff had not sought leave to supplement her Complaint under Fed. R. Civ. P. 15(d) to join the issues relating to her health and life insurance in this case.

36. Plaintiff was posed an interrogatory during discovery that asked her to "[i]dentify the 'state education mandates' whose violation Plaintiff was allegedly disclosing or attempting to disclose for purposes of her claim under New York Labor Law § 740(2)(a) as alleged in paragraph 13 of Plaintiff's Complaint, including but not limited to a specific citation to the applicable state or federal statute, regulation, opinion, or order," to which Plaintiff responded "New York State Education Law Sections 12, 13.1(b), 13.1(c), 13.1(f), 13.2(a), 13.2(b), 13.3, 13.4, 13.5, 16, 4002, 4005, 4006, 4404, and 4407."

37. Plaintiff was posed an interrogatory during discovery that asked her "[t]o the extent that Plaintiff claims that she was subjected to a retaliatory action by Defendant for disclosing or threatening to disclose a violation of any law, rule, or regulation that created a substantial and specific danger to public health or safety, identify the specific law, rule, or regulation that Defendant allegedly violated which Plaintiff disclosed or threatened to disclose," to which Plaintiff responded "New York State Education Law Sections 12, 13.1(b), 13.1(c), 13.1(f), 13.2(a), 13.2(b), 13.3, 13.4, 13.5, 16, 4002, 4005, 4006, 4404, and 4407."

38. Plaintiff was posed an interrogatory during discovery that asked her to "identify each and every way in which Defendant's action presented a substantial and specific damage to the public safety and health as alleged in paragraph 40 of

Plaintiff's Complaint," to which Plaintiff responded "[t]he actions of the Defendant placed in danger the mental health, physical well being [sic] and educational welfare of all the disabled students subjected to the treatment described."

39.    Plaintiff was posed an interrogatory during discovery that asked her "to the extent that Plaintiff claims she experienced an adverse employment action, identify each action taken by [Defendant] that Plaintiff claims to be an adverse employment action," to which Plaintiff responded "Plaintiff was constructively discharged when she was removed from St. Anne's employee health care plan and so notified on November 15, 2015, removed from the employee life insurance plan and so informed on November 9, 2015, [and] removed from the teaching duties on or about September 3, 2015, and assigned menial job tasks."

40.    During a proceeding before the New York State Worker's Compensation Board held in connection with her efforts to obtain New York State Worker's Compensation benefits, Plaintiff offered testimony wherein she stated that she did not resign from her position with Defendant and was not terminated from her position with Defendant, but rather that she was taken out of work by her doctor and began a leave of absence on September 4, 2014.

41.    During her deposition in this case, Plaintiff testified that she has not resigned from her employment with Defendant and that, "to the best of [her] knowledge," she is currently employed by Defendant but out of work on an unpaid medical leave of absence.

42.     The decision to assign Plaintiff to the Albany Program for the 2014-2015 school year was made by Principal Weidman and Mr. Cortese.

43.     Principal Weidman's decision to assign Plaintiff to the Albany Program for the 2014-2015 school year was not consciously motivated by the fact that Plaintiff anonymously contacted the New York State Education Department in March 2014, or the Justice Center in May 2014.[11]

44.     Principal Weidman testified that the purpose of his decision to assign Plaintiff to the Albany Program "was to ensure that there was a teacher in that program that had the experience that [Plaintiff] had and the ability to manage . . . that kind of program . . . with the students that come into that program."[12]

45.     Principal Weidman testified that he recommended assigning Plaintiff to act as the lead teacher in the Albany Program for the 2014-2015 school year to Mr. Cortese.

46.     Mr. Cortese testified that Plaintiff's role in the Albany Program would have been to "teach and administer the program."

--------

[11]     The Court notes that Plaintiff admits that Principal Weidman testified as to this fact, but denies the fact as a legal conclusion.  (Dkt. No. 66, Attach. 14, at ¶ 43 [Pl.'s Rule 7.1 Resp.].)  The Court notes that, as it is stated above, the fact is not a legal conclusion.  The Court notes also that Plaintiff has failed to cite any record evidence controverting the above-stated fact.

[12]     The Court notes that, in her response to this factual assertion, Plaintiff relies on the deposition testimony of Ms. Darius but neglects to acknowledge that portion of the testimony stating that (1) she did not know if Plaintiff's copying duties were supposed to be for the whole year or not, and (2) Plaintiff would also be preparing the teachers' lesson plans.  (Dkt. No. 66, Attach. 9, at 39, 44 [Darius Dep.].)  In any event, the absence of Ms. Darius' knowledge about Principal Weidman's purpose in making the decision does not constitute evidence controverting Principal Weidman's deposition testimony.

47.    During his deposition, Mr. Cortese described the "skill set" that Plaintiff possessed which he felt suited her to the position, and described her as an "experienced teacher" with "classroom experience, dealing with different age groups, and [doing] some administrative work."

48.    Mr. Cortese testified that Plaintiff possessed organization skills, could "deal with the school district regarding referrals," was "able to assess kids' [academic] needs," and was "able to deal with discipline as well, [including] classroom behavioral problems."

49.    Mr. Cortese testified that Ms. Darius, who was responsible for the Albany Program and would have acted as Plaintiff's direct supervisor, was "considering retiring, and so she was phasing out of that responsibility."

50.    After Plaintiff began a leave of absence on September 4, 2014, she continued to receive health insurance through Defendant.

51.    After Plaintiff began a leave of absence, Plaintiff continued to accrue additional sick, vacation, and personal leave, and was paid for holidays that occurred while she was on leave.[13]

---

[13]    Plaintiff denies that she was on a "leave of absence," stating that she was actually on a "medical leave of absence." (Dkt. No. 66, Attach. 14, at ¶ 51 [Pl.'s Rule 7.1 Resp.].)  Apart from the fact that Plaintiff cites no evidence to support her denial, the Court sees no merit in Plaintiff's objection, given that Defendant has clearly recognized within its statement of material facts that Plaintiff's leave of absence was based on medical reasons.  *See N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").  This asserted fact is therefore deemed admitted.

52.     Once Plaintiff ran out of accrued leave time in late 2014, the compensation that Plaintiff received for paid holidays was used to pay her employee share of health insurance premiums and, if there was any money left over, to pay for other things such as her life insurance premiums.

53.     There were pay periods when Plaintiff did not receive any compensation for paid holidays because the money was used to pay for, in whole or in part, Plaintiff's health and life insurance.

54.     During the pay periods when Plaintiff did not receive any compensation for paid holidays, Defendant paid Plaintiff's employee share of health insurance premiums and then deducted those amounts (when it could) from future pay periods when Plaintiff received holiday pay.

55.     On June 12, 2015, Defendant informed all employees that it was changing its policy and would no longer provide for the accrual of benefits for employees on unpaid leave, effective July 1, 2015.

56.     The policy change concerning paid holidays while on unpaid leave impacted not only Plaintiff, but all other employees who were on a leave of absence at the time and any employee who took a leave of absence in the future.

57.     Defendant's staff inadvertently failed to notify Plaintiff of the policy change concerning the paid holidays.[14]

---

[14]     Although Plaintiff denies that this failure was inadvertent, she fails to cite any record evidence in support of that denial.  This fact is therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

58.    Plaintiff continued to receive health insurance through Defendant after July 1, 2015.

59.    As of November 2015, Plaintiff continued to receive what was, in essence, free health insurance because she was not receiving any paid leave time and had not otherwise paid for her health insurance.[15]

60.    On November 9, 2015, Defendant wrote a letter to Plaintiff in which it notified her about the policy change that went into effect on July 1, 2015.

61.    In its letter of November 9, 2015, Defendant notified Plaintiff that she would be allowed to remain on Defendant's health insurance policy through December 31, 2015, without having to exercise her rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), provided that she reimbursed Defendant for the contributions that it made on her behalf to date, and provided that she paid her employee share of health insurance premiums through December 31, 2015.

62.    Plaintiff subsequently responded to Defendant's letter of November 9, 2015, by exchanging a series of e-mails with Defendant's payroll and benefits staff in which she stated, among other things, that she "appreciate[d] that [St. Anne] continued to maintain [her] health insurance beyond [July 1, 2015]."[16]

---

[15]    Plaintiff denies this asserted fact, but fails to cite any evidence supporting that denial. (Dkt. No. 66, Attach. 14, at ¶ 59 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[16]    Plaintiff denies this asserted fact, arguing in particular that "the letter quote is incomplete and taken out of context."  (Dkt. No. 66, Attach. 14, at ¶ 62 [Pl.'s Rule 7.1 Resp.].)  However, the Court finds that the quoted language, which is preceded by the words "among other things" is neither incomplete nor misleading.  This fact is therefore deemed admitted.

14

63.     In subsequent e-mail exchanges with Defendant's payroll and benefits staff in January 2016, Plaintiff and Defendant agreed on a repayment schedule under which Plaintiff would reimburse Defendant for the health insurance premium payments that Defendant made on Plaintiff's behalf from July 1, 2015, through October 31, 2015, as well as the amount that Plaintiff would need to remit each month in order to maintain her health insurance through December 31, 2015.

64.     On November 28, 2015, Plaintiff issued Defendant a personal check for her employee share of the November 2015 insurance premiums, but did not remit a payment for her employee share of the December 2015 insurance premiums.

65.     In January 2016, Plaintiff was notified of her right to continue to receive health insurance through Defendant's group health insurance policy under COBRA.

66.     Plaintiff did not, however, elect to receive health insurance through COBRA.

67.     Defendant offered its employees the ability to receive a life insurance policy from UNUM Life Insurance Company ("UNUM") that was then paid through routine payroll deductions.

68.     Plaintiff elected to receive a life insurance policy through UNUM, which she paid through deduction from her wages.

69.     After Plaintiff went out of work on a leave of absence and ran out of paid leave time, Defendant deducted the UNUM policy premium from Plaintiff's holiday pay.

70.     When Plaintiff did not receive holiday pay or the full amount of the holiday pay was used to pay Plaintiff's health insurance premiums, Defendant paid the premium for Plaintiff's UNUM policy.

71.    The last noted deduction from Plaintiff's holiday pay for a payment to UNUM was in February 2015.

72.    In or around June 2015, Defendant informed UNUM that Plaintiff was on a leave of absence.

73.    After Defendant informed UNUM that Plaintiff was on a leave of absence, UNUM did not provide Defendant with any correspondence concerning a change in the status of Plaintiff's life insurance policy.

74.    Prior to January 2016, Defendant believed that Plaintiff continued to have a life insurance policy with UNUM.

75.    The letter of  November 9, 2015, that Plaintiff received from Defendant referenced the payments that Defendant had made to UNUM on Plaintiff's behalf, and asked her to reimburse them for those amounts.

76.    Plaintiff did not remit any payments to Defendant for the UNUM policy premiums that were paid on her behalf as reflected in Defendant's letter of November 9, 2015.

77.    In mid-January 2016, Plaintiff began contacting Defendant about her UNUM policy.

78.    In mid-to-late January 2016, Defendant learned that UNUM had cancelled Plaintiff's UNUM policy in June or July 2015 after UNUM learned that Plaintiff was on a leave of absence.

79.    In mid-to-late January 2016, Defendant learned that UNUM had  set the effective date of the cancellation of Plaintiff's UNUM policy as September 5, 2014, which was the day after Plaintiff began her leave of absence.

80.    Defendant made efforts to get Plaintiff's UNUM policy reinstated.

81.    UNUM refused to reinstate Plaintiff's UNUM policy.

82.    Defendant advised Plaintiff that UNUM refused to reinstate her UNUM policy
and offered to reimburse her for the amounts that had been deducted from her
holiday pay and remitted to UNUM, as well as the amounts that Defendant
remitted to UNUM on Plaintiff's behalf during her leave of absence.

83.    Plaintiff accepted and deposited the payment that Defendant offered to Plaintiff to
reimburse her for the amounts that had been deducted from her holiday pay and
remitted to UNUM, as well as the amounts that Defendant remitted to UNUM on
Plaintiff's behalf during her leave of absence.

84.    At no point while addressing the issues relating to her health and life insurance
did Plaintiff raise any concerns about potential retaliation.

85.    Many of Plaintiff's communications that Defendant exchanged with Plaintiff
concerning her health and life insurance were contemporaneously copied to her
counsel, who also raised no concerns about any potential retaliation.

86.    Plaintiff offered the same response to three interrogatories posed to her during
discovery that asked "[t]o the extent that Plaintiff claims that she suffered an
adverse employment action, identify each and every fact which shows that each
adverse employment action that Plaintiff claims to have experienced occurred
under circumstances giving rise to an inference of age discrimination," "[t]o the
extent that Plaintiff claims that she suffered an adverse employment action on
account of her age, identify each and every fact which shows that age was the

'but-for' cause of the challenged employment action," and "[t]o the extent that Plaintiff claims that she was subject to a retaliatory action by Defendant, identify each retaliatory act committed by Defendant."

87.  Plaintiff was posed an interrogatory during discovery that asked "to the extent that Plaintiff claims that she was treated less favorably than similarly situated younger employees, identify the younger employees by name and state each and every way in which Plaintiff was treated less favorably than those employees," to which she responded "Emily Cody, Brittany Cameron and Kristina Savoie.  Each was hired and employed as teachers teaching students and assigned classrooms. Plaintiff was removed from teaching students, removed from teaching, assigned to photocopy and other menial tasks, removed from having a classroom, and then constructively discharged."

88.  Emily Cody, Brittany Cameron, and Kristina Savoie were all under the age of forty during the period at issue.

89.  Plaintiff stated in one interrogatory response that Defendant "replaced [her] teaching responsibilities with younger, less experienced [and] less certified teachers."

90.  Ms. Cody and Ms. Savoie's schedules for the 2014-2015 school year were as follows:

**Kristina Savoie:**

Period 1:      English 7
Period 2:      AIS 7/8
Period 3:      Prep
Period 4:      English 8-1
Period 5:      English 8-2
Period 6:      Media Arts
Period 7:      Albany Program

**Emily Cody:**

Period 1:      English 11
Period 2:      English 11
Period 3:      English 10
Period 4:      English 12
Period 5:      Life Skills 8-1
Period 6:      Prep
Period 7:      Life Skills

91.    During her deposition, Plaintiff was asked "[w]hy do you believe St. Anne

discriminated against you on account of your age," to which she responded by

identifying, among other things, "preferential treatment or attention given to

younger staff," "social gatherings outside of the agency that [she] didn't

particularly feel welcome to attend," "gifts given to younger staff," and what she

perceived to be a "tone and inflection" that was directed at younger staff that

differed from the tone directed towards her."

92.    During her deposition, Plaintiff was unable to identify any specific evidence to

support her belief that Defendant took any action on account of her age.[17]

---

[17]      Plaintiff denies this asserted fact, citing to a number of additional facts from other
sources.  (Dkt. No. 66, Attach. 14, at ¶ 93 [Pl.'s Rule 7.1 Resp.].)  However, while the additional
facts certainly will not be disregarded, none of these sources contradict the underlying asserted
fact that Plaintiff failed to identify specific evidence *during her deposition*.  Plaintiff's citations
are therefore not responsive to the asserted fact and this fact is deemed admitted.  *Baity*, 51 F.

93.    During her deposition, Plaintiff was unable to identify any specific evidence to support the belief that the specific events set forth in her Complaint were motivated by her age.[18]

94.    Ms. Darius began as a teacher with Defendant, then became a Guidance Counselor, then Assistant Principal, then a teacher again, and finally oversaw the Albany Program before she retired at the end of the 2014-2015 school year.

95.    During the entire time that Diane Malecki was communicating with Plaintiff about her health insurance, Ms. Malecki had no knowledge that Plaintiff had (in mid-2014) contacted the New York State Education Department or the New York State Justice Center for the Protection of People with Special Needs about her concerns; and, before February 4, 2016, Mr. Cortese had no direct involvement in the issue of Plaintiff's health and life insurance and did not provide Ms. Malecki with any directives or guidance with respect to the issue.[19]

96.    Brittany Cameron, the other "younger teacher" who Plaintiff identified in her response to Defendant's second set of interrogatories, did not teach any classes during the 2014-2015 school year that Plaintiff had taught during the 2013-2014 school year.

---

Supp. 3d at 418; *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

[18]    *See, supra*, note 17 of this Decision and Order.  (*See also* Dkt. No. 66, Attach. 14, at ¶ 94 [Pl.'s Rule 7.1 Resp.].)

[19]    (*Compare* Dkt. No. 63, Attach. 2, at ¶ 96 [Def.'s Rule 7.1 Statement, asserting a variation of the above-stated fact and supporting the above-stated fact with accurate record citations] *with* Dkt. No. 66, Attach. 14, at ¶ 96 [Pl.'s Rule 7.1 Resp., denying Defendant's variation of the above-stated fact as vague and non-specific but failing to cite any record evidence controverting the well-supported above-stated fact].)

97.    Ms. Cody was involved in the Albany Program during the 2014-2015 school year.

98.    Through her deposition testimony and errata sheet, Ms. Darius identified the teachers who were involved in the Albany Program during the 2014-2015 school year.

99.    The ages of the teachers Ms. Darius identified as the teachers who were involved in the Albany Program during the 2014-2015 school year, as of September 4, 2014, were 25, 30 (three teachers), 39, 53, 59, and 61.

100.    Defendant's teachers are not assigned to teach specific students; rather, teachers are assigned to teach academic courses and the nature and location of those assignments can vary from year to year.

**C.    Parties' Briefing on the Pending Motion**

**1.    Defendant's Motion for Summary Judgment**

**a.    Defendant's Memorandum of Law**

In its motion for summary judgment, Defendant asserts five arguments. (Dkt. No. 63, Attach. 1, at 9-35 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff's claim under N.Y. Lab. L. § 740 was not timely commenced because she failed to commence her lawsuit within one year of the last act of alleged discrimination. (*Id.* at 9-14.) Specifically, Defendant argues that her claim accrued on September 3, 2014, the day on which her change in assignment was confirmed and made effective, and the last day Plaintiff was at St. Anne before beginning her leave of absence. (*Id.* at 9-11.) Defendant argues that the cessation of health and life insurance in November 2015 does not constitute a separate and distinct act but is rather a continuing effect of past conduct that is based on her lengthy leave of absence. (*Id.* at 12-14.)

Defendant argues that, in any event, the Court should not consider the cessation of health and life insurance because Plaintiff did not join these events (which post-date the Complaint) with her allegations in the Complaint.  (*Id.* at 12-13.)

Second, Defendant argues that, even if found to be timely, the N.Y. Lab. L. § 740 claim must be dismissed because Plaintiff cannot establish the essential elements of that claim.  (*Id.* at 14-27.)  Specifically, Defendant argues as follows: (a) Plaintiff did not engage in protected activity because she has not shown that a violation of any of the identified state education laws actually occurred, nor has she shown that any violation created a substantial or specific danger to the public at large; (b) Plaintiff did not experience a retaliatory personnel action because she has not shown that she was constructively discharged or that the change in position was actually a demotion or caused a materially significant disadvantage, and that Plaintiff voluntary stopped making payments on her health insurance and declined to continue coverage under COBRA; and (c) Plaintiff has not shown that Defendant acted with retaliatory animus, noting evidence that Plaintiff had in fact been selected for the new position because of her skills and experience, and that the cessation of health and life insurance were not retaliatory actions because her health insurance was stopped as a result of a company-wide policy change and her life insurance was stopped at the direction of UNUM rather than Defendant.  (*Id.*)

Third, Defendant argues that the NYSHRL age discrimination claim must be dismissed because N.Y. Lab. L. § 740 contains an express waiver of such claims that arise out the same set of facts as those underlying a claim pursuant to N.Y. Lab. L. § 740.  (*Id.* at 27-29.)

Fourth, Defendant argues that Plaintiff's ADEA and NYSHRL age discrimination claims must be dismissed because she has not shown that she suffered an adverse employment action on

account of her age.[20]  (*Id.* at 29-35.)  Defendant argues that the cessation of health and life

insurance cannot be considered as an adverse action for Plaintiff's ADEA claim because she did

not exhaust her administrative remedies with regard to those claims.  (*Id.* at 30.)  Defendant

argues that, although younger teachers were in teaching positions for the 2014-2015 school year,

the evidence shows that there were also teachers over the age of 40 in teaching positions that

school year, something which suggests that Plaintiff was not treated differently because of her

age.  (*Id.* at 32-33.)  Defendant also argues that younger teachers were not assigned all of the

classes that Plaintiff had taught the previous year.  (*Id.* at 33-34.)  Finally, Defendant argues that

Plaintiff has failed to adduce any evidence other than her own subjective feelings to support her

claims of age discrimination.  (*Id.* at 35.)

      Fifth, in relation to the aforementioned age discrimination claims, Defendant argues that,

even if Plaintiff could establish a prima facie case, Defendant has provided legitimate, non-

discriminatory reasons that Plaintiff cannot show were a pretext for age discrimination under the

applicable "but-for" standard.  (*Id.* at 36.)

#### b.      Plaintiff's Opposition Memorandum of Law

      Generally, in opposition to Defendant's motion, Plaintiff asserts two arguments.  (Dkt.

No. 66, at 11-22 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that she has established a

prima facie case of age discrimination under the ADEA and NYSHRL.  (*Id.* at 11-20.)  Plaintiff

argues that she has exhausted her administrative remedies as to the ADEA claim with respect to

the allegations in the Complaint and that there is no requirement to exhaust administrative

---

[20]      Defendant concedes that Plaintiff was a member of a protected age group and was
qualified to hold her position for the purpose of these claims.  (Dkt. No. 63, Attach. 1, at 31-32
[Def.'s Mem. of Law].)

remedies under the NYSHRL.  (*Id.* at 11-12.)  Regarding the elements of these claims, Plaintiff argues that she has shown that she was similarly situated to two younger teachers (Ms. Cody and Ms. Savoie) because she was qualified to teach the same classes, and yet she was treated less favorably than these teachers because, while they were given teaching assignments for the 2014-2015 school year, she was assigned photocopying tasks.  (*Id.* 14-15.)  Plaintiff also argues that she suffered an adverse employment action because her new responsibilities were essentially those of a teaching assistant that were materially less prestigious, materially less suited to her skills and expertise, and materially less conducive to her career development.  (*Id.* at 15-20.)

Second, Plaintiff argues that Defendant has not met its burden to show a legitimate, non-discriminatory reason that is not pretextual.  (*Id.* at 20-23.)  Specifically, Plaintiff argues that the deposition testimony of Ms. Darius creates a genuine dispute of material fact as to whether the changes in Plaintiff's responsibilities were, in effect, a demotion because Plaintiff's new responsibilities consisted not of working on "the planning and implementation of instruction" but photocopying materials for other teachers.  (*Id.*)

Finally, in an affidavit submitted with the opposition memorandum of law, Plaintiff's attorney stated that "Plaintiff notified defendant's counsel contemporaneous with this filing that the New York State pendant cause of action for violation of Lab. L. § 740 is withdrawn."  (Dkt. No. 66, Attach. 5, at ¶ 10 [Luibrand Aff.].)

### c.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant asserts two arguments.  (Dkt. No. 67, at 5-14 [Def.'s Reply Mem. of Law].)  First, Defendant argues that Plaintiff has consented to waiver of her NYSHRL claim because she did not oppose Defendant's

argument.  (*Id.* at 5-6.)  Defendant argues that withdrawal of the N.Y. Lab. L. § 740 claim does

not save the NYSHRL claim because the mere institution of the N.Y. Lab. L. § 740 claim

constitutes a waiver of related claims, even if those claims are later not pursued or decided.  (*Id.*)

Second, Defendant argues that Plaintiff cannot establish a prima facie case of age

discrimination under either the ADEA or the NYSHRL.  (*Id.* at 6-15.)  Defendant argues that

Plaintiff has not shown that she was replaced by younger employees because, while some of her

classes did go to younger employees, others did not.  (*Id.* at 6-8.)  Defendant also argues that

Plaintiff has not shown an adverse employment action because there is no actual evidence to

support Plaintiff's belief that her job would consist of photocopying and making lesson plans for

other teachers given the inconsistencies in various testimony provided by Ms. Darius and the fact

that Defendant was required to hire additional teachers to cover classes in the Albany Program

after Plaintiff went on her leave of absence, something that suggests Plaintiff would in fact have

been teaching classes.  (*Id.* at 9-12.)  Defendant additionally argues that it has provided a

legitimate reason for its actions that Plaintiff has not shown to be a pretext for age

discrimination.  (*Id.* at 12-14.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing a Motion for Summary Judgement

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record]

evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[21]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[22]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[23]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that

---

[21]       As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[22]       Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[23]       *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[24]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[25]  Stated another way, when a non-movant fails to oppose a legal argument

---

[24]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[25]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.     Legal Standard Governing an Age Discrimination Claim Under the ADEA and NYSHRL

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, a plaintiff must show that (1) "she was within the protected age group"; (2) "she was qualified for the position"; (3) "she experienced adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).

Once the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." *Gorzynski*, 596 F.3d at 106. If the defendant provides such reasons, the plaintiff must show that those reasons are merely a pretext for discrimination based on age. *Id.* "To establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

28

Thus, "the plaintiff retains the burden of persuasion to establish (by a preponderance of the evidence) that age was the 'but-for' cause of the employer's adverse action." *Gross*, 557 U.S. at 177, 180.  The Second Circuit has recognized that "the legal standards governing age discrimination claims under the NYSHL have long been considered to be identical to those under the ADEA," including the but-for standard of causation. *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (citing *Gorzynski*, 596 F.3d at 105 n.6).

## III.    ANALYSIS

### A.    Whether Plaintiff Has Waived Her Claim of Age Discrimination Under N.Y. Exec. L. § 296 ("NYSHRL")

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 63, Attach. 1, at 27-29 [Def.'s Mem. of Law]; Dkt. No. 67, at 5-6 [Def.'s Reply Mem. of Law].)  To these reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Plaintiff has effectively withdrawn her retaliation claim pursuant to N.Y. Lab. L. § 740 based on Plaintiff's attorney's explicit statement in his affidavit and the failure to address Defendant's arguments related to that claim in its memorandum of law.  (Dkt. No. 66, Attach. 5, at ¶ 10 [Luibrand Aff.].)  There has not been a voluntary dismissal of this claim pursuant to Fed. R. Civ. P. 41(a)(1)(ii) because there has been no filing of a stipulation of dismissal signed by all the parties who have appeared.  However, even in the absence of a formal voluntary dismissal, Plaintiff's failure to respond to Defendant's lengthy argument regarding N.Y. Lab. L. § 740 lightens Defendant's burden with regard to its

request for the dismissal of this claim.[26]  The Court finds that the substantive arguments and evidence cited in Defendant's memorandum of law are sufficient to meet this lightened burden. (Dkt. No. 63, Attach. 1, at 14-27 [Def.'s Mem. of Law].)  In the alternative, the Court may, and does, construe the failure to respond to an opposing party's arguments as an effective abandonment of the claim.[27]  For all of these alternative reasons, the Court finds that granting summary judgment to Defendant as to Plaintiff's N.Y. Lab. L. § 740 claim is appropriate.

Having determined that Plaintiff's N.Y. Lab. L. § 740 claim must be dismissed, the first question the Court must answer is whether the mere fact that Plaintiff had asserted that claim in the Complaint is, despite the claim's subsequent apparent withdrawal, sufficient to constitute a waiver of the claim pursuant to N.Y. Exec. L. § 296.

As Defendant notes in its memorandum of law, N.Y. Lab. L. § 740(7) states that "the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law."  N.Y. Lab. L. § 740(7).  Both state and federal courts have found that dismissal or discontinuance of the N.Y. Lab. L. § 740 claim does not negate the

---

[26]     *See Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 & n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (finding that the defendant's burden on its motion to dismiss was lightened due to the plaintiff's failure to address the defendant's request to dismiss a cause of action based on the expiration of the applicable statute of limitations, and collecting cases in which failure to respond to an argument resulted in a "modest" burden for the threshold party); *accord Trombley v. O'Neill*, 929 F. Supp. 2d 81, 100 (N.D.N.Y. 2013) (Suddaby, J.); *Jenkins v. Liadka*, 10-CV-1223, 2012 WL 4052286, at *8 (N.D.N.Y. Sept. 13, 2012) (Suddaby, J.); *Hunt v. Cmty. Gen. Hosp.*, 11-CV-0415, 2012 WL 3151542, at *4 (N.D.N.Y. Aug. 2, 2012) (Suddaby, J.).

[27]     *See*, *e.g.*, *Beers*, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999); *Devito*, 2004 WL 3691343, at *3.

waiver contained in N.Y. Lab. L. § 740(7) because the statute "states that there is a waiver by the mere institution of an action containing a [N.Y.] Labor Law § 740 claim." *Rotwein v. Sunharbor Manor Residential Health Care Facility*, 181 Misc. 2d 847, 853-54 (N.Y. Sup. Ct. Nassau Cty. 1999); *see also Kramsky v. Chetrit Grp., LLC*, 10-CV-2638, 2010 WL 4628299, at *4 (S.D.N.Y. Nov. 16, 2010) (finding plaintiff's other cause of action was waived even though plaintiff amended the complaint to remove the N.Y. Lab. L. § 740 claim); *Reddington v. Staten Island Univ. Hosp.*, 893 N.E.2d 120, 124-25 (N.Y. 2008) (noting that "[t]he plain text of [Section 740(7)] indicates that 'instituting an action–without anything more–triggers waiver,'" and "in New York, an action is instituted with the filing of a complaint and service upon opposing parties"); *Hayes v. Staten Island Univ. Hosp.*, 834 N.Y.S.2d 274, 275 (N.Y. App. Div. 2d Dept. 2007) ("[P]laintiff's attempt to amend the complaint to exclude the Labor Law § 740 cause of action did not nullify the waiver" of contract claims).  Based on these cases, the Court finds that Plaintiff's withdrawal of her N.Y. Lab. L. § 740 claim does not negate the waiver of relevant related claims effectuated by the institution of that claim as part of the Complaint.

The next relevant question is whether Plaintiff's discrimination claim pursuant to N.Y. Exec. L. § 296 is a claim that is waived under N.Y. Lab. L. § 740(7).  Courts have noted that N.Y. Lab. L. § 740(7) bars "only those claims 'arising out of the retaliatory personnel action.'" *Gaughan v. Nelson*, 94-CV-3859, 1995 WL 575316, at *6 (S.D.N.Y. Sept. 29, 1995).  Such claims are therefore barred where they are "inextricably arising out of the course of conduct supporting [p]laintiff's § 740 claim."  *See Gaughan*, 1995 WL 575316, at *6 (finding that a claim for gender discrimination pursuant to N.Y. Exec. L. § 296 was waived because that claim was premised on the same adverse action underlying a claim for retaliation pursuant to N.Y. Lab.

31

L. § 740, i.e., a campaign of harassment involving a denial of promotion); *Feinman v. Morgan Stanley Dean Witter*, 193 Misc.2d 496, 497 (N.Y. Sup. Ct. New York City 2002) (finding that a claim for age discrimination pursuant to N.Y. Exec. L. § 296 was specifically waived by the institution of a claim for retaliation pursuant to N.Y. Lab. L. § 740 because they were based on the same adverse action, i.e., discharge).  The Court finds that, based on a review of the applicable evidence and given Defendant's lightened burden due to Plaintiff's failure to respond to Defendant's arguments on this issue, Plaintiff's N.Y. Exec. L. § 296 claim is barred by the waiver in N.Y. Lab. L. § 740(7).

Plaintiff's retaliation and age discrimination claims are both premised on the same adverse action, namely, the change in her job responsibilities for the 2014-2015 school year.  As to the retaliation claim, Plaintiff alleges in the Complaint that, after making complaints to two state bodies in 2014, she was removed from her classroom (in addition to being intimidated and yelled at) by administrators at the school, and then ultimately reassigned to a different position that involved work that would "typically be assigned to an entry level clerk rather than a thirty (30) year accomplished special education teacher."  (Dkt. No. 1, at ¶¶ 14-27, 38-44 [Pl.'s Compl.].)  As to the age discrimination claim, Plaintiff alleges that, after two younger teachers were hired, she was reassigned to a different position, and the younger teachers with less experience and less certifications were assigned her previous classroom duties.  (*Id.* at ¶¶ 25-28, 34-37.)  Moreover, as Defendant notes, Plaintiff provided the same response to interrogatory questions regarding the underlying facts and acts for both her age discrimination and retaliation claims.  (Dkt. No. 63, Attach. 1, at 28-29 [Def.'s Mem. of Law]; Dkt. No. 63, Attach. 6, at 5.)  Because Defendant has sufficiently shown that the age discrimination claim is "inextricably

arising out of the course of conduct supporting" the N.Y. Lab. L. § 740 retaliation claim in that they are both premised in large part on the change in Plaintiff's position for the 2014-2015 school year, Plaintiff's age discrimination claim pursuant to N.Y. Exec. L. § 296 is covered by the waiver in N.Y. Lab. L. § 740(7). Defendant's motion for summary judgment on this issue is therefore granted and Plaintiff's Second Claim is dismissed.

### B.    Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim Under the ADEA

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 63, Attach. 1, at 29-35 [Def.'s Mem. of Law]; Dkt. No. 67, at 6-12 [Def.'s Reply Mem. of Law].) To these reasons, the Court adds the following analysis.[28]

### 1.    Adverse Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse,' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities,'" and "'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Galabya*, 202 F.3d at 640.

---

[28]    As noted previously, Defendant does not dispute that the first two elements of the prima facie case analysis (i.e., that Plaintiff is a member of the protected age group and is qualified for her position) are met. (Dkt. No. 63, Attach. 1, at 31-32 [Def.'s Mem. of Law].)

Here, Plaintiff argues that the change in her position and responsibilities for the 2014-2015 school year constituted an adverse employment action.[29]  (Dkt. No. 66, at 12-20 [Pl.'s Opp'n Mem. of Law].)  Plaintiff's argument relies on her assertion that her new position was to essentially be a "photocopy clerk" and prepare lesson plans for other teachers rather than working as a special education teacher as she had for the previous 30 years.  (Id. at 17-20.)  Defendant argues that evidence from Principal Weidman and Mr. Cortese establishes that Plaintiff was not going to be merely a photocopy clerk, but rather an integral administrator for the Albany Program who would also be teaching classes.  (Dkt. No. 63, Attach. 1, at 20-21 [Def.'s Mem. of Law]; Dkt. No. 67, at 9-12 [Def.'s Reply Mem. of Law].)

The Court finds that, based on the admissible record evidence, there is a genuine dispute of material fact as to whether the change in Plaintiff's position and job responsibilities for the 2014-2015 school year constitutes an adverse employment action.  In particular, the evidence presents differing accounts as to what Plaintiff's responsibilities would have been in that new position.  The accounts of Principal Weidman and Mr. Cortese on one side, and Ms. Darius and Plaintiff on the other, as to what Plaintiff's job duties and responsibilities would be are materially conflicting.  (Dkt. No. 63, Attach. 4, at 4-6, 9-11 [Pl.'s Dep.]; Dkt. No. 67, Attach. 5, at 3-4 [Darius Dep.]; Dkt. No. 66, Attach. 7, at 56-65, 73-78, 81-84, 95 [Weidman Dep.]; Dkt. No. 66, Attach. 8, at 103-06, 115-16, 120 [Cortese Dep.]; Dkt. No. 66, Attach. 9, at 38-49, 55-62, 73-75, 87-88 [Darius Dep.].)  Because the Court cannot reconcile this factual dispute on the

---

[29]     To the extent that Plaintiff's interrogatory responses suggest that she has also intended to allege the cessation of her health and life insurance in November 2015 as adverse employment actions, the Court finds that these actions cannot be considered adverse employment actions for the reasons discussed in Defendant's memorandum of law.  (Dkt. No. 63, Attach. 1, at 13-14, 21, 30 [Def.'s Mem. of Law].)

evidence currently in the record, the Court cannot find that Defendant is entitled to summary judgment based on lack of an adverse action. Rather, a rational trier of fact could reasonably find that the change amounted to an adverse employment action based on the testimony of Ms. Darius. *See Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 364-65 (2d Cir. 1980) (finding that transfer of a teacher with twenty years of experience and focused training in middle/junior high school arts to an elementary school position was a "radical change in the nature of the work" that constituted "interference with a condition or privilege of employment"); *see also Francis v. Presser*, 13-CV-0250, 2015 WL 1456601, at *3 (N.D.N.Y. Mar. 30, 2015) (Treece, M.J., Suddaby, J.) (noting that "sworn statements are 'more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion' and the credibility of such statements is better left to a trier of fact").

### 2.    Inference of Discrimination

A showing of disparate treatment is a recognized method of raising an inference of discrimination. *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014). Raising such an inference under a disparate treatment theory "requires the plaintiff to show that the employer treated him or her 'less favorably than a similarly situated employee' outside of the protected group." *Raspardo*, 770 F.3d at 126 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 [2d Cir. 2000]). In order to be similarly situated for the purpose of raising an inference of discrimination, an employee must be "'similarly situated in all material respects' to the plaintiff;" the plaintiff and the comparator employee need not be identical, but they "must have been 'engaged in comparable conduct,' that is, conduct of 'comparable seriousness.'" *Raspardo*, 770 F.3d at 126.

Plaintiff argues that younger teachers Ms. Cody and Ms. Savoie were similarly situated to her because both were "a school teacher at defendant school teaching the same population of students" and because she was qualified to teach the same classes as Ms. Cody and Ms. Savoie. (Dkt. No. 66, at 13-14 [Pl.'s Opp'n Mem. of Law].)  Plaintiff argues that, despite being similarly situated, these younger teachers were assigned to teach classes and she was assigned to be a "photocopy clerk," a disparity in treatment that gives rise to an inference of discrimination.  (*Id.* at 13-15.)

The Court finds Plaintiff's arguments unpersuasive because, as Defendant notes, although Ms. Cody and Ms. Savoie were indeed younger than her, numerous other teachers assigned to teach during the 2014-2015 school year were above the age of 40.  In particular, Defendant identified that, of the various classes Plaintiff had been assigned to teach through different portions of the 2013-2014 school year, those classes were assigned to Patricia Jenkins (age 61), Thomas Ellis (age 59), Steven Cangemi (age 53), Sonya Whittaker (age 47), Corrine Walthers (age 39), Kristina Savoie (age 30), and Emily Cody (age 25); additionally, two other teachers taught a Life Skills class: Brian Cofresi (age 34) and Stephanie Schaefer (age 44).  (Dkt. No. 67, at 7-8 [Def.'s Reply Mem. of Law].)  Given the fact that the majority of the teachers who were assigned Plaintiff's former classes were within the protected age group under the ADEA, Plaintiff's focus on the assignments of the two youngest teachers does not, by itself, give rise to an inference of discrimination based on age.  Additionally, even if the Court were to accept the Fourth Quarter class schedule from the 2013-2014 school year that Plaintiff asserts is the appropriate schedule for comparison, the only classes in that schedule that overlap with the undisputed schedules for Ms. Cody and Ms. Savoie are English 7 and 8 (three of Ms. Savoie's

classes in the 2014-2015 school year); Ms. Cody was not assigned any of Plaintiff's former Fourth Quarter classes. (*Compare* Dkt. No. 63, Attach. 2, at ¶ 91 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 66, Attach. 14, at ¶ 91 [Pl.'s Rule 7.1 Resp.].)  However, in her affidavit, Plaintiff admits that she had a different class schedule for the First Quarter of the 2013-2014 school year by noting that Ms. Cody and Ms. Savoie were assigned to teach her former Life Skills classes. (Dkt. No. 66, Attach. 1, at ¶¶ 17-19 [Pl.'s Aff.].)  A review of Plaintiff's class schedules for both the First and Fourth Quarters reveals that, of the 12 classes on those two schedules, Ms. Cody and Ms. Savoie combined were assigned only two of those classes (English 7/8 and Living Environment/Life Skills); the sole English 7/8 class Plaintiff had taught in the 2013-2014 school year constituted three of Ms. Savoie's classes (English 7, English 8-1, and English 8-2), while Life Skills constituted two of Ms. Cody's classes (Life Skills 8-1 and Life Skills).  (Dkt. No. 63, Attach. 17, at 2 [Master Schedule, 2013-2014]; Dkt. No. 63, Attach. 2, at ¶ 90-91 [Def.'s Rule 7.1 Statement]; Dkt. No. 66, Attach. 1, at ¶¶ 14-19 [Pl.'s Aff.]; Dkt. No. 66, Attach. 2, at 1-2; Dkt. No. 66, Attach. 14, at ¶ 90 [Pl.'s Rule 7.1 Resp.]; Dkt. No. 67, at 7-8 [Def.'s Reply Mem. of Law].)  Notably, the majority of Plaintiff's classes (9 of the 12 for both quarters) in the 2013-2014 school year were math-based classes; all of Plaintiff's math-based classes were assigned to teachers aged 53 or older in the 2014-2015 school year.  (Dkt. No. 67, at 7-8 [Def.'s Reply Mem. of Law].)  Given the fact that the admissible record evidence shows that Ms. Cody and Ms. Savoie were assigned only a very small amount of the classes that Plaintiff had taught in the previous year (while the majority of those classes were assigned to teachers aged 53 or older), Plaintiff has not shown that she was essentially "replaced" by similarly situated younger employees and therefore has not met her burden to show an inference of discrimination based on

age.  Because Plaintiff cannot show she meets all of the elements to establish a prima facie case

of age discrimination, the Court finds that Defendant's motion for summary judgment should be

granted as to that claim.[30]

### 3.    Legitimate, Non-Retaliatory Reasons

Although the Court has found that Plaintiff is unable to establish a prima facie case, it

nonetheless notes that Defendant is entitled to summary judgment on Plaintiff's age

discrimination claim on the alternative basis of Plaintiff's failure to show a genuine issue of

material fact as to whether discrimination was the but-for cause of the change in Plaintiff's

position, job duties, and responsibilities for the 2014-2015 school year.

Defendant argues that the decision to assign Plaintiff to the Albany Program for the

2014-2015 school year was "to ensure that there was a teacher in that program that had the

experience . . . and the ability to manage . . . that kind of program . . . [and] the students that

come into that program" (according to Principal Weidman), sentiments echoed by Mr. Cortese,

who stated that Plaintiff's skill set and experience (including classroom experience, dealing with

different age groups, organizational skills, dealing with the school district, and assessing

students' academic needs) made her suited to "teach and administer the program."  (Dkt. No. 63,

Attach. 1, at 22-23 [Def.'s Mem. of Law].)  Defendant therefore argues that Plaintiff's

assignment for the 2014-2015 school year was not a punishment related to her age, but rather a

decision based on her applicable skills and level of teaching experience.

---

[30]    The Court also notes that Plaintiff's N.Y. Exec. L. § 296 age discrimination claim would also be dismissed for same reasons as Plaintiff's ADEA claim if it were not waived by the initiation of her N.Y. Lab. L. § 740 claim.  *See Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) ("Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA."); *accord Colandrea v. Hunter-Tannersville Cent. Sch. Dist.*, 15-CV-0456, 2017 WL 1082439, at *4 (N.D.N.Y. Mar. 22, 2017) (Kahn, J.).

Plaintiff argues that the Court should disbelieve this asserted reason and find it to be a pretext for discrimination because Ms. Darius' testimony shows that (while she "[didn't] know it was supposed to be for the whole year or not") Plaintiff was not going to be "work[ing] full-time on planning and implementation of instruction," but rather "for the balance of the day she was to be a teacher assistant and not a teacher." (Dkt. No. 66, at 21-22 [Pl.'s Opp'n Mem. of Law].) However, even assuming there is a genuine dispute of material fact as to what exactly Plaintiff's responsibilities and job duties would have been for the entirety of her 2014-2015 school year assignment, Plaintiff still has not met her burden to show that Defendant's proffered reason is pretextual. Most notably, Plaintiff has adduced no evidence to show that, even if her new position would be in essence a demotion, age discrimination was the but-for cause underlying the change in her assignment for the 2014-2015 school year. As discussed above in Part III.B.2. of this Decision and Order, the majority of the classes that Plaintiff had been assigned to teach in the 2013-2014 school year were assigned to other teachers aged 53 or older for the 2014-2015 school year; such facts are hardly indicative of an employer discriminating against Plaintiff because of her age. (Dkt. No. 67, at 7-8 [Def.'s Reply Mem. of Law].) The specific reasons that Plaintiff provided for her belief that she was the subject of age discrimination (subjective feelings of not being welcome at gatherings with younger staff, of preferential treatment and gifts given to younger staff, and of a different tone used by Principal Weidman towards the younger staff) are also not sufficient to establish that Plaintiff's age was the but-for cause of Defendant's action. (Dkt. No. 63, Attach. 4, at 17-18, 20-25, 33-42 [Pl.'s Dep.].) *See also Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) (finding that a plaintiff's "'[feelings and perceptions] of being discriminated against [are] not evidence' of

discrimination") (alteration in original); *accord Phillips v. Cent. New York Psychiatric Ctr.*, 16-CV-0219, 2017 WL 2869938, at *5 (N.D.N.Y. July 5, 2017) (Kahn, J.); *Zhao-Royo v. New York State Educ. Dept.*, 14-CV-0935, 2017 WL 149981, at *31 (N.D.N.Y. Jan. 13, 2017) (Suddaby, C.J.); *Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 404 (N.D.N.Y. 2008) (McAvoy, J.).  The admissible record evidence simply does not contain facts from which a reasonable fact finder could conclude that Plaintiff's assignment for the 2014-2015 school year was because of age discrimination.  Defendant's motion for summary judgment on Plaintiff's ADEA claim is therefore granted on this alternative ground.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 63) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 22, 2018
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge